61 So.2d 46

**PRATHER et al. v. RAY et al.**

6 Div. 368.

Supreme Court of Alabama.

June 30, 1952.

Rehearing Denied Nov. 6, 1952.

Wm. S. Pritchard and Victor H. Smith, Birmingham, for appellants.

Roy L. Smith, Phenix City, Harold M. Cook, Birmingham, and John C. Godbold, Montgomery, for appellees.

LAWSON, Justice.

Appellants and appellees were all candidates in the Democratic Primary held on May 2, 1950, for membership on the State Democratic Executive Committee of Alabama from the Third Congressional District. The State Democratic Executive Committee of Alabama will be referred to hereafter as the State Committee.

Appellees and four persons other than appellants were declared elected to the State Committee from the Third Congressional District. Appellants were not declared elected, there being only eight members of the State Committee from each Congressional District.

Proceedings were instituted contesting the election of appellees. The Chairman of the State Committee appointed a subcommittee to. conduct the contest proceedings. Litigation ensued wherein the jurisdiction of the subcommittee was challenged. The subcommittee's jurisdiction was upheld. Ex parte May, 253 Ala. 684, 46 So.2d 836; Ex parte May, 254 Ala. 180, 47 So.2d 640; Bridges v. McCorvey, 254 Ala. 677, 49 So. 2d 546. See Ex parte May, 254 Ala. 626, 49 So.2d 551.

After this litigation was terminated, the subcommittee proceeded to hear the contests and on January 3, 1951, upheld the contestants and declared that appellees were not elected to the State Committee from the Third Congressional District. On the same day the Chairman of the subcommittee addressed a communication to the Secretary of State advising that officer of the result of the contests and that appellants and four other persons, not appellees, were duly elected to membership on the State Committee from the Third Congressional District. A similar communication was addressed to the Chairman of the State Committee. On January 4, 1951, the Chairman of the State Committee, in his capacity as such and in his capacity as Chairman and Secretary of the canvassing board of the State Committee, filed in the office of the Secretary of State a certificate stating and showing that appellants and four other persons, not appellees, were duly elected as members of the State Committee from the Third Congressional District.

The members of the State Committee elected in the Democratic Primary held on May 2, 1950, assembled in the City of Montgomery on January 15, 1951, and adopted the following resolution:

"Whereas, the final returns from the Democratic Primary Election held May 2, 1950, show that Neil O. Davis, Jack M. Bridges, W. L. Horn and Grover C. Hughes and each of them were duly elected as members of the State Democratic Executive Committee of Alabama from the Third Congressional District of Alabama for the term beginning on Monday, January 15, 1951; and

"Whereas, on January 3, 1951, a subcommittee of the State Democratic Executive Committee of Alabama rendered its finding and judgment that the said four named members and each of them were not duly and legally elected to such membership; and

"Whereas, it has been proved to this Committee that the finding of said subcommittee was arrived at by a majority of one or a vote of three to two, and that there was no evidence to support said findings and that said subcommittee misapplied the law to the facts; that said subcommittee actually counted less than 2500 ballots cast in said primary election for the office of member of said State Democratic Executive Committee of Alabama from the Third Congressional District; that no fraud, corruption or crookedness in said election were proved, to said subcommittee and that there has been no evidence of any such; that the conclusion of said subcommittee and its finding and judgment would result in destroying the sanctity of the ballot and in disfranchising the voters of the Third Congressional District of Alabama; that such conclusion, finding and judgment is not final and binding and should be set aside and held for naught by this Committee.

"Now, therefore, be it resolved by the state democratic executive commit-

tee of Alabama in meeting assembled at Montgomery, Alabama on this the 15th day of January, 1951, as follows:

"1. That the finding, judgment and conclusion of the subcommittee of the State Democratic Executive Committee af Alabama rendered on the 3rd day of January, 1951, to the effect that Neil O. Davis, Jack M. Bridges, W. L. Horn and Grover C. Hughes and each of them did not receive a majority of the legal votes cast in said primary election for the office of member of the State Democratic Executive Committee of Alabama from the Third Congressional District of Alabama, and that neither of them was legally elected to such office, be and the same is hereby reversed, set aside and held for naught.

"2. That it is ordered, adjudged and decreed by the State Democratic Executive Committee of Alabama that Neil O. Davis, Jack M. Bridges, W. L. Horn and Grover C. Hughes and each of them were duly and legally elected in the primary election held on May 2, 1950, to the office of member of the State Democratic Executive Committee of Alabama from the Third Congressional District of Alabama and should forthwith be and are duly installed and seated as such members.

"3. That the Secretary of this Committee forward a certified copy of this resolution to the Secretary of State of Alabama and deliver such copy to the Chairman of this Committee."

In accordance with the terms of the foregoing resolution, the State Committee rejected Prather, Ray, Hawkins and Samford, and recognized Bridges, Davis, Horn and Hughes as members of the State Committee. From January 15, 1951, the four men last mentioned above have continued to act as members of the State Committee.

The matters above set out appear in a petition or application and the exhibits thereto filed on September 20, 1951, in the circuit court of Jefferson County by Prather, Ray, Hawkins and Samford against Ben F. Ray, individually and as Chairman of the State Committee, the State Democratic Executive Committee of Alabama, and Bridges, Davis, Horn and Hughes.

In addition to the matters heretofore set out, the petition or application as amended avers in substance as follows:

1. That the finding and order of the subcommittee under date of January 3, 1951, is a final adjudication that petitioners were elected in the primary election held on May 2, 1950, and therefore petitioners are members of the State Committee from the Third Congressional District and are entitled to participate in the proceedings of the State Committee and to be recognized as members thereof by the State Committee and its Chairman.

2. That the defendants' sole claim to membership on the State Committee is based on the resolution of the State Committee adopted January 15, 1951.

3. That no rule or regulation of the State Committee authorized that body to review, vacate, annul, set aside or disregard the finding and order of the subcommittee and that neither the State Committee nor any other tribunal had any jurisdiction or authority to take such action.

4. That petitioners in no manner consented to the adoption or consideration of the State Committee's resolution of January 15, 1951, nor did they consent in any manner to any hearing or any appeal or review of the finding and order of the subcommittee taken on January 3, 1951; that petitioners did not appear before the State Committee in person or by counsel at the time that Committee adopted the resolution on, to wit, January 15, 1951.

5. That under a resolution adopted January 21, 1950, the State Committee ordered a primary election to be held on May 2, 1950, and provided in said resolution that the membership of the State Committee should be elected in that primary; that the State Committee having so ordered, all of the provisions of Chapter 2, Title 17, Code of Alabama 1940, were and are applicable to and control the election of members of the State Committee, including all the provisions of said Chapter with respect to the institution of contests and the determination thereof.

After praying for process, the petition or application prays in pertinent parts as follows:

(1) " * * * and that Your Honors will grant petitioners a common law writ of certiorari or other appropriate writ directed to the said State Democratic Executive Committee of Alabama, and to the said Ben F. Ray, individually and as Chairman of the State Democratic Executive Committee of Alabama for the removal of said order, or resolution so adopted by said State Democratic Executive Committee of Alabama in meeting assembled at Montgomery, Alabama, on the 15th day of January, 1951 * * * and that Your Honors will vacate, set aside, reverse and annul the said action of the said Democratic Executive Committee of Alabama so undertaken to be made by said resolution or order on January 15, 1951.

(2) "Your petitioners further pray that upon hearing of this cause this court will order, adjudge and decree:

(a) "That the State Committee had no jurisdiction to reverse, set aside and hold for naught the finding and order of its subcommittee rendered on the 3rd day of January, 1951.

(b) "That the State Committee was without jurisdiction and had no authority to order, adjudge and decree, on January 15, 1951, that Bridges, Davis, Horn and Hughes were duly and legally elected in the primary election held on May 2, 1950, to membership on the State Committee from the Third Congressional District.

(c) "That the finding and order of the subcommittee of the State Committee rendered on January 3, 1951, is a valid, final, binding and conclusive adjudication of the contests.

(d) "That petitioners, Prather, Ray, Hawkins and Samford are entitled to be seated and participate as members of the State Committee.

(e) "That the respondents, Bridges, Davis, Horn and Hughes were not so elected and are not entitled to be seated and participate as members of the State Executive Committee.

(3) " * * * That Your Honors will by appropriate orders and writs direct and require said State Democratic Executive Committee of Alabama and the said Ben F. Ray, as Chairman of said committee to seat your petitioners and to recognize them as members of said State Democratic Executive Committee of Alabama.

(4) " * * * That Your Honors will declare the rights, status and legal relationship of your petitioners as members of said State Democratic Executive Committee of Alabama."

(5) General relief.

Upon the filing of the petition, the trial court entered an order to the effect that the State Committee and its Chairman, Ben F. Ray, certify to the trial court "the judgment and all papers and records of said State Democratic Executive Committee of Alabama pertaining to the said resolution adopted by said State Democratic Executive Committee of Alabama on the 15th day of January, 1951, referred to and set out in paragraph 15 of the foregoing petition, and that the same be examined and reviewed by this court." No return has been made to the writ.

All subsequent pleadings and the action of the trial court thereon, as well as the judgment of the trial court, appear in the following minute entry:

"On this the 8th day of December, 1951, came the parties by their attorneys, and Petitioners amend petition by separate paper this day filed; this cause coming on to be heard on this day was submitted to the court upon the 'Motion to Quash and Vacate' filed in this court on November 5, 1951, by the Defendant, State Democratic Executive Committee of Alabama; and was further submitted to the court on the 'Motion to Quash and Vacate' filed in this court on November 5, 1951, by the defendant, Ben F. Ray, Chairman of the State Democratic Executive Committee of Alabama, individually; the court is of the opinion that it is advisable to defer

the making of rulings upon these submissions at this time and accordingly the court takes said submissions under advisement with a view of making rulings upon them at a later time if in the court's opinion such rulings should appear to be appropriate or necessary; it is further ordered and adjudged by the court that the deferment by the court of the making of rulings upon said submissions shall not prejudice the right of the movants in said Motions to Quash and Vacate, to have said motions decided hereafter with such effect as if they were decided now; Defendants refile to the petition as amended all pleas in abatement heretofore filed by them to the original petition.

"This cause was further submitted to the court upon the motion of the petitioners to strike all of the defendants' pleas in abatement (other than plea in abatement No. 8), and said motion is by the court heard and considered, whereupon,

"It is considered, ordered and adjudged by the court that said motion to strike be and the same is hereby overruled, to which action and ruling of the court, Petitioners except.

"All parties agree that the documents which are attached to defendants' original plea in abatement No. 8, and there marked exhibits I and II, respectively, shall be regarded by the court as exhibits I and II to Defendants' amended plea in abatement No. 8; the petitioners refile to defendants' amended plea in abatement No. 8, the same demurrer which the Petitioners have heretofore filed to the Defendants' original plea in abatement No. 8; the Petitioners file demurrer to all pleas in abatement, and all demurrers to all pleas in abatement filed by the defendants are by the court heard and considered, whereupon.

"It is considered, ordered and adjudged by the court that all of said demurrers to all of the pleas in abatement filed by the Defendants, be and they are hereby sustained, to which action, ruling and judgment of the court, as respects the demurrer to each of said pleas in abatement, separately and severally, each Defendant excepts.

"All parties agree that the document attached to Defendants' amended plea in abatement No. 8 and marked exhibit III to said plea is a correct copy of all of the Rules of the Democratic Party of Alabama now in existence, and that such rules have been in existence continuously from January 1, 1950 to the present time, (December 8, 1951), and that from January 1, 1950 to the present time (December 8, 1951) there has not been in existence any rule of the Democratic Party of Alabama other than the rules set forth in said Exhibit III to said amended plea in abatement No. 8; all parties agree that this circuit court shall take judicial notice of the content, existence and duration of such rules (as just specified by said agreement); and this circuit court agrees to take such judicial notice; all parties further agree that this circuit court shall take judicial notice of the rules of parliamentary procedure governing the House of Representatives of the State of Alabama at and during all of the times material in this action; and this circuit court agrees to take such judicial notice.

"All defendants refile to the petition as amended all demurrers heretofore filed by the defendants to the original petition; this cause coming on to be heard further was submitted to the court upon the demurrers of the defendants to the petition as amended; this court is of the opinion that the office of member of the State Democratic Executive Committee is ad hoc a public office; and therefore, that this court has jurisdiction to determine in this action whether or not the decision made by the State Democratic Executive Committee (by its resolution of January 15, 1951, here under attack) was within its lawful jurisdiction; the court is of the further opinion that the facts alleged in the petition do not

show that the State Democratic Executive Committee was without jurisdiction to make said decision and that the petitioners are not entitled to any of the adjudications or declarations specifically prayed for in the petition as amended;

"It is, therefore, ordered, adjudged and decreed by the court, for the reasons just stated, that the demurrers of the defendants to the petition as amended be and they hereby are sustained, to which action, ruling and judgment of the court, each petitioner excepts.

"The petitioners state to the court that they consider themselves under the necessity of taking a non-suit, under the provisions of Title 7, Section 819, of the 1940 Code of Alabama, by reason of the adverse action, ruling and judgment of this court in sustaining the demurrers of the defendants to the petition as amended; petitioners move the court to enter a judgment of non-suit solely by reason of and on account of the action, ruling and judgment of the court (adverse to the petitioners) sustaining the demurrers of the defendants to the petition as amended; and in order that petitioners may be enabled to take an appeal to the Supreme Court of Alabama to review said action, ruling and judgment of the court sustaining the demurrers of the defendants to the petition as amended, and said motion is by the court heard and considered, whereupon,

"It is considered, ordered and adjudged by the court that said motion of petitioners be and the same is hereby granted; and that the petitioners be and they are hereby non-suited; and that the defendants be and they hereby are discharged; and that the defendants go hence without day and have and recover of the Petitioners all costs herein accrued for which execution may issue."

From the judgment of nonsuit, petitioners have appealed to this court.

Appellants have made two assignments of error. They relate to the same ruling of the trial court, namely, the sustaining of the demurrer to the petition, which ruling superinduced the judgment of nonsuit.

■ There were numerous grounds of demurrer. But a demurrer is an entity and if any ground is well taken, then the action of the trial court in sustaining the demurrer must be upheld.

■ The trial court did not specifically point out the grounds of demurrer which it thought to be well taken. But we think it clearly appears from the minute entry heretofore set out that those grounds of demurrer taking the point that the circuit court was without jurisdiction to question the action of the State Committee were overruled and those grounds of demurrer pointing out that from the averments of the petition it was not made to appear that the State Committee was without jurisdiction to vacate, set aside and annul the action of its subcommittee were sustained.

This court has held that the circuit courts of this state have jurisdiction to determine whether an executive committee of a political party or a subcommittee thereof has jurisdiction to hear and determine contents of election or nomination. Ex parte State ex rel. Bragg, 240 Ala. 80, 197 So. 32; Ex parte May, 253 Ala. 684, 46 So.2d 836; Boyd v. Garrison, 246 Ala. 122, 19 So.2d 385.

In Ex parte May, 253 Ala. 684, 46 So.2d 836, the appellees here filed their petition for writ of prohibition in the circuit court of Coffee County seeking to prevent a subcommittee of the State Committee from proceeding with a hearing of an election contest on the ground that the subcommittee was without jurisdiction. The trial court entered an order commanding the members of the said subcommittee to desist from proceeding further with the hearing of the contest, or else show cause why a writ of prohibition should not issue restraining and perpetually forbidding each of the members of said subcommittee from proceeding further with the contest. The contestants thereafter filed in this court

their original petition for writ of prohibition or other appropriate writ directed to the trial judge requiring him to desist from proceeding further in the prohibition case filed in his court. In that case the appellees took the position directly opposite to the position which they now take. In that case they contended that the trial court had jurisdiction because the subcommittee was about to proceed in a matter in which it had no jurisdiction. We agreed with the position taken at that time by the present appellees, saying:

"The circuit courts of this state have jurisdiction to issue writs of prohibition to prevent the executive committees of political parties and the subcommittees thereof from proceeding in election contests, where such committees or subcommittees do not have jurisdiction to hear and determine such contests. Such is the effect of Ex parte State ex rel. Bragg, 240 Ala. 80, 197 So. 32."

In the case of Boyd v. Garrison, supra, it appeared that the appellant, Boyd, and one Daniel were candidates for the Democratic nomination for the office of member of the Board of Revenue of Walker County. Boyd was regularly declared by the County Democratic Executive Committee to be the nominee. Daniel filed a statement of contest. The County Executive Committee heard the contest, upheld the contestant, Daniel, and declared that he was the nominee. Boyd took an appeal to the State Executive Committee. A subcommittee was appointed to hear and decide the contest. The subcommittee upheld the action of the County Committee.

Boyd instituted a proceeding in the circuit court of Walker County against Garrison, the probate judge of Walker County; John M. Miller, as chairman of the Democratic Executive Committee of Walker County; Silas D. Cater, as chairman of the subcommittee of the State Democratic Executive Committee; and Daniel. Boyd prayed for a declaratory judgment to the effect that the certificate of nomination issued to Daniel was not sufficient to justify the insertion of his name as the Democratic nominee for the office of member of the Board of Revenue of Walker County on the ground that the County Committee was without jurisdiction to hear and decide the contest because of the insufficiency of the statement of contest, and also prayed for a writ of prohibition to the judge of probate, Garrison, restraining him from causing the name of Daniel to be placed on the official ballot as the Democratic nominee for said office.

The trial court dismissed the petition and Boyd appealed to this court. We held that a writ of prohibition was not appropriate.

However, we held that the remedy provided by the declaratory judgment law was available to Boyd, saying:

"But insofar as the petition seeks to have a declaration as to the validity and legal effect of the contest proceedings, thereby seeking no restraining order or prohibition, we see no reason why the Declaratory Judgment Act, section 156 et seq., Title 7, Code of 1940, is not available. See Avery Freight Lines v. White, 245 Ala. 618, 18 So.2d 394(8), 400 [154 A.L.R. 732].

"We there held that such proceeding was usable to construe the judgment of a court as it affects the rights of parties after that court had lost all control over it and there was an actual controversy as to its meaning or effect as it appears on record; that is 'whether it is void in toto or in part; whether errors in that decree, if any, were errors reviewable only on appeal, or were jurisdictional; to what extent, if any, (the decree) was without jurisdiction of the court and void.'

"The inquiry in such proceeding as here applied relates to the question of whether the county executive committee acquired jurisdiction of the contest so as to give it power to hear the controversy sought to be presented. That is a serious and important question." 246 Ala. 125, 19 So.2d 387.

We then proceeded to consider the question as to whether or not the statement of contest filed by Daniel with the County

Committee was sufficient to invoke the jurisdiction of that committee. We held that it was sufficient and that there was no error in the ruling of the trial court.

We come now to the question of whether the trial court was correct in sustaining those grounds of the demurrer pointing out that from the averments of the petition it was not made to appear that the State Committee was without jurisdiction to vacate, set aside and annul the action of its sub-committee.

The State Committee in its resolution adopted January 21, 1950, expressly provided that members of the State Committee should be elected in the primary to be held on May 2, 1950. § 336, Title 17, Code 1940. Hence, the provisions of the Primary Election Laws of this state relating to contests, the power and authority of the State Committee and its subcommittees govern the rights of the parties to this litigation. § 339, Title 17, Code 1940; Garrett v. Cuninghame, 211 Ala. 430, 100 So. 845; Bridges v. McCorvey, 254 Ala. 677, 49 So.2d 546.

█ Contests of election to membership on a state executive committee are to be heard and tried by that committee. § 373, Title 17, Code 1940; Bridges v. McCorvey, 254 Ala. 677, 49 So.2d 546. The statement of contest must be filed with the Chairman of the State Committee within fifteen days after the result of the election has been declared. §§ 373 and 384, Title 17, Code 1940. Upon the filing of a contest with him, the Chairman must call the Committee to meet at a time not less than ten days nor more than twenty days from the time of filing of the contest, for the purpose of hearing and determining the same, or, without calling the Committee to meet, the Chairman may appoint a subcommittee as provided in § 394, Title 17, Code 1940. § 386, Title 17, Code 1940.

Section 394, Title 17, Code 1940, is as follows:

"The state executive committee of any party shall have the right, power and authority to appoint, or to authorize and empower the chairman thereof to appoint, from time to time, a sub-committee, or sub-committees, to look after, supervise and conduct primary elections under this chapter, receive returns from, and canvass and tabulate and declare the results of, and certify to, any primary election held under this chapter, to hear, consider and decide any contest of any election or of the nomination of any candidate in any election held under this chapter, and generally to delegate to and confer upon such sub-committee the right, power, and authority to do and perform any act or thing which said state executive committee could do or perform and the chairman of such sub-committee or sub-committees shall also have and be authorized to perform any act, and exercise any power or authority which the chairman of the state executive committee has or could exercise under this chapter."

Upon the filing of the contest, the Chairman of the State Committee entered an order in part as follows:

"Now, therefore, I, the undersigned Gessner T. McCorvey, as Chairman of the State Democratic Executive Committee of Alabama, do hereby set and appoint Monday, the 12th day of June, 1950, at 10:00 o'clock A.M., as the date for the hearing of the said contest.

"And I, the undersigned Gessner T. McCorvey, as Chairman of the State Democratic Executive Committee of Alabama, do, under the authority vested in me by law, and by resolutions of the State Democratic Executive Committee of Alabama, hereby name and appoint a Sub-Committee of five, consisting of H. M. Abercrombie, of Birmingham, Alabama, from the 9th Congressional District, as Chairman; William E. Johnston, of Mobile, Alabama, from the First Congressional District; H. Coleman Long, of Uniontown, Alabama, from the Sixth Congressional District; J. Herbert Meighan, of Gadsden, Alabama, from the First Congressional District; and Frank J. Mizell, Jr., of Montgomery, Alabama, from the Second Congres-

sional District; all of whom are members of the said State Democratic Executive Committee of Alabama, to hear and decide the said contest; and I do hereby authorize and empower the said Sub-Committee to have and exercise, and it shall have and exercise, all of the power and authority given to, or possessed by, the State Democratic Executive Committee of Alabama to hear such contest and decide the same; and I do delegate to and confer upon such Sub-Committee the right, power and authority to do and perform any act or thing in connection with such contest which said State Executive Committee could do or perform and the Chairman of such Sub-Committee shall also have and be authorized to perform any act, and exercise any power or authority which the Chairman of the State Executive Committee has or could exercise in connection with such contest.

"Given under my hand and the official seal of the State Democratic Executive Committee of Alabama, at Mobile, Alabama, on this the 31st day of May, 1950.

Gessner T. McCorvey

(Gessner T. McCorvey)
As Chairman of the State Democratic Executive Committee of Alabama"

■ The Chairman of the State Committee was vested with authority to appoint the subcommittee. Bridges v. McCorvey 254 Ala. 677, 49 So.2d 546.

■ When a subcommittee is duly appointed under the terms and provisions of § 394, Title 17, Code 1940, to hear, consider and determine the contest of an election or nomination, its judgment cannot be set aside by the full State Committee merely because the latter body finds that the conclusion reached by the subcommittee is against the weight of the evidence. We do not think the legislature contemplated any such review by the full Committee. Nor do we think that any rule adopted by the State Committee purporting to give it such re-

visory power would be valid. Such rule, in our opinion, would be in conflict with the legislative intent and therefore would be beyond the power of the Committee to adopt.

But in the instant case we are concerned with the question of whether the full Committee had the jurisdiction or authority to refuse to recognize as members of that Committee those persons whom the contest subcommittee declared to have been duly elected and to seat instead those persons declared by the canvassing subcommittee to have been elected, upon a finding by the full State Committee that the action of the subcommittee which heard and decided the contest was arbitrary in that there was no evidence to support such a finding. The resolution of the State Committee under date of January 15, 1951, which is made an exhibit to the petition, when construed most strongly against the appellants, petitioners below, shows that the State Committee so found.

A committee or subcommittee appointed to hear, consider and decide contests under the provisions of Chapter 2, Title 17, Code 1940, has powers such as those conferred on a court of special and limited jurisdiction. Boyd v. Garrison, supra.

Its judgment or order, to be valid and operative, must be supported by adequate evidence. The evidence must be of basic facts which are needed to sustain the order. An order or judgment made without such evidence is beyond the power of the committee and its absence goes to the jurisdiction to make the particular order. Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288. These principles were recognized in the case of Alabama Power Co. v. City of Fort Payne, 237 Ala. 459, 187 So. 632, 123 A.L.R. 1337. Cf. Alabama Public Service Commission v. Mobile Gas Co., 213 Ala. 50, 104 So. 538, 41 A.L.R. 872. In 42 American Jurisprudence, p. 496, § 150, it is shown that where a hearing is required to justify administrative action, there must be evidence formally introduced at the hearing and a finding or decision without such evidence is void. See Akron C. & Y. R. Co. v. U. S., 261 U.S. 184, 43 S.Ct. 270, 67 L.

116

Ed. 605. Of course, the principle is well understood that if an order is void for want of authority to render the order, it is not necessary to make a direct attack on it to impeach it.   .

When the members of the State Committee who were elected in the primary of May 2, 1950, met in Montgomery on January 15, 1951, there were two groups of people claiming to have been legally elected to membership on the Committee. The appellees, Bridges, Davis, Horn and Hughes, based their claim on the fact that they had been declared elected and that the order or judgment of the contest subcommittee declaring that they were not elected and that appellants were elected was void in that such order or judgment was arbitrarily entered in that there was no substantial evidence to support it.

If the order or judgment of the contest subcommittee was void, there was no duty on the part of the full Committee to recognize it as a basis of membership on the part of appellants. We think it was within the province of the full Committee to, in effect, examine the credentials of the contesting groups and accept one and reject the other upon the basis of their validity.

In passing on the validity of the credentials of the two groups, the full Committee was not a reviewing court and its decision was subject to review by a court on certiorari and by a declaratory judgment proceeding for the purpose of determining whether it exceeded its authority in passing upon the legal effect of the credentials of the contending claimants.

Such is the object of the instant proceeding. But we think that when the petition in this case is properly analyzed, it is not made to appear that the full State Committee was without jurisdiction to take the action shown by its resolution of January 15, 1951.

We hold, therefore, that the trial court did not err in sustaining the demurrer to the petition and that the judgment appealed from should be sustained. It is so ordered.

Affirmed.

All the Justices concur.